### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ERIK T. ROBINSON**<br>　　**Plaintiff**<br><br>V.<br><br>**UPSTART HOLDINGS, INC.**　and<br>**UPSTART NETWORK, INC.**　and<br>**DAVID GIROUARD**<br>　　**Defendants** | Case: 1:24-cv-01998 JURY DEMAND<br>Assigned To : McFadden, Trevor N.<br>Assign. Date : 7/10/2024<br>Description: Pro Se (Deck-F) |

## COMPLAINT

Plaintiff Erik T. Robinson hereby brings this action pursuant to the Fair Credit Reporting Act, 15 USC § 1681 Et seq. and the Racketeer Influenced Corrupt Organizations Act: 18 U.S.C. §§ 1961-68.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to the following laws:

Federal Question: 28 USC § 1331- This District Court has original jurisdiction over this complaint because it is brought under Federal laws, to wit: the RICO Act: 18 USC §§ 1961-1968 and the Fair Credit Reporting Act: 15 USC § 1681 Et seq.

　　Both of those laws specify the jurisdiction of the Federal District Courts: 15 USC § 1681p and 18 USC § 1964(c).

Diversity Jurisdiction: 28 USC § 1332- This District Court has jurisdiction in this case because the parties are located in different states and the damages exceed $75,000

Venue: This Federal District Court is the proper venue because the Plaintiff is a resident of Washington, D.C.

1

**RECEIVED**
JUL 1 0 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## PARTIES

Plaintiff is Erik T. Robinson, Pro Se, a citizen of Washington, District of Columbia. He resides at 1794 Lanier Place NW, Apt 406 Washington, D.C. 20009.
Mr. Robinson is a "Consumer" as defined in the FCRA 15 USC § 1681a(c) and a "Person" as defined in 18 USC § 1961.

Defendant Upstart Network, Inc. ("Upstart") is a Delaware corporation formed in February of 2012. Their principal place of business is: 2950 South Delaware Street, Suite 410, San Mateo, California, 94403.
    They have multiple lending licenses in multiple states. NMLS- 936133. According to 2024 corporate filings with California they are a "Lending and investment platform"
    They are held by Upstart Holdings, Inc., a Delaware corporation doing business in California. They are a publicly traded company since their IPO on December 16th, 2020. (Nasdaq Global Select Market symbol- "UPST")

Defendant David Girouard is the owner of Upstart.

## INTRODUCTION

### FAIR CREDIT REPORTING ACT:

The Fair Credit Reporting Act, 15 USC § 1681 Et seq., also known as the FCRA, was enacted to regulate the consumer credit reporting industry, including the usage of consumer credit reports by companies that sell financial products and services. Unfortunately these companies include a growing number of unethical firms that obtain consumer credit reports for unlawful reasons.

Predatory lenders are despicable. They lurk around at the fringes of consumer finance, looking for people in desperate situations, swooping in and offering temporary relief at a steep rate of interest that would make a loan-shark jealous.

If there is one thing more despicable than a predatory lender, it is a scam artist that pretends to be a predatory lender for the purpose of tricking a victim into a program that damages a person's life far more than high interest rates.

2

Among these criminals is a particularly loathsome varietal that has grown like an epidemic since the Pandemic, when many people accumulated credit card debt which caused a surge in the demand for personal loans and debt-restructuring services.

These scams involve a company pretending to be making an offer of a personal loan when their actual intent is to sell debt-restructuring services. Although some of these firms have licenses to be lenders or offer debt settlement services, most do not and the individual agents are usually not licensed professionals. Most of them are in fact nothing but marketing companies that operate with various companies that offer debt-settlement services.

The scam begins with the purchase of pre-screened lists from the major consumer credit reporting bureaus: Transunion, Equifax and Experian. They use those lists to mail out advertisements to potential victims. The ads are often deceptive on the outside, designed to look like an official government document, a check or even having a fake credit card on the inside to entice a person to open the envelope. Inside is an offer for a pre-approved personal loan. An interested person calls or applies online. A sales agent responds. They go through a well rehearsed sales pitch, building up the victim, pretending to go through the standard steps of applying for a loan, using an encouraging tone of voice as they run the victim's credit report in the process. They often put a victim on hold while they review the credit report and "run it by their underwriting people."

Inevitably they come back on the phone with the grave tone of voice one expects from a doctor or car mechanic with bad test results. They go through the victim's credit history and how certain items were preventing the loan from being approved. They then

change back to an encouraging tone of voice to tell the victim that there is another great option available, it's called debt restructuring.

Although debt restructuring is perfectly legal, entry into those programs is best done with caution. They are a last step to avoid bankruptcy. Those programs drop credit scores several points, requiring two to seven years to sufficiently recover to make major purchases such as a car or a home. It also requires canceling any credit lines and forgiving large portions of debt, which causes the consumer to incur a tax debt.

While there are many legitimate non-profit credit counseling agencies, these unethical for-profit firms have arisen, charging exorbitant fees for their services which negate much of the savings to the consumer. They also require a consumer to open a bank account at a bank owned by another "partner" company.

In addition, many of these unethical firms compel victims to do illegal actions. One of the standard questions they ask is whether the victim is planning on making any major purchases, such as a car or house. They also ask if the credit card debt is due to some sort of life crisis, such as long term unemployment or divorce or even pandemic related, such as medical bills. The reason they do this is that they are going to have the victim deliberately destroy their credit by not paying their credit card bills. Instead they have the victims deposit money into the aforementioned escrow bank account. Once this has gone on for a few months they then step in and negotiate with the creditors.

But these loathsome creatures are not acting alone. As previously stated, they have help. This includes the debt-restructuring companies, the lending companies who have actual licenses who pretend to deny people loans, the bank which holds the money and then there is the process of acquiring the consumer credit report of the

victim. Most often this is done by the marketing firm that sent the offer letter. Sometimes they use a third party to make a "straw-purchase" of the credit report, much like a criminal paying a law-abiding citizen to buy them a gun.

The Defendant, Upstart, is both. They are a licensed lender in many states. There are over 500 complaints about their loans on the Better Business Bureau website[1]. They also use their lending licenses to pretend to consider a consumer for a loan when they have no such actual intent. They also straw-purchase credit reports for others in order to assist in compiling dossiers that get passed around the industry much the same way debt collection companies swap portfolios of debts.

The actions of the Defendants are blatant violations of the Fair Credit Reporting Act pursuant to the opinions of the Federal Trade Commission: (see attached Memorandum Regarding the Fair Credit Reporting Act)

## RICO ACT:

In addition to violating the Fair Credit Reporting Act, the conduct of the defendant also violates the Racketeer Influenced Corrupt Organizations Act: 18 USC §§1961-68, also known as the RICO Act.

As previously discussed, these scams begin by sending a false loan offer to a proposed victim using a letter sent through the United States Postal Service. This constitutes Mail Fraud, 18 USC § 1341 as outlined in *Schmuck v. United States*:

*"(1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts) and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989);

---

[1] https://www.bbb.org/us/ca/san-mateo/profile/loans/upstart-1116-545147

By repeatedly obtaining the Plaintiff's credit reports in connection with the Mail Fraud the Defendant's conduct constitutes Racketeering as defined in 18 USC § 1961(1)(B), thereby violating Sections 1962(b) and (c). This triggers a private right of action per Section 1964(c).

## **BACKGROUND OF DEFENDANT**

Upstart Network, Inc. is a subsidiary of Upstart Holdings, Inc. (NASDAQ: UPST) They are Delaware corporations formed in 2012 and 2013 respectively and then registered in California in 2012 and 2014 respectively. Their founder and CEO is Mr. David Girouard.

For reasons that are unclear both of those entities were suspended in California, for failure to file paperwork with the state until Upstart Holdings restarted filing in November of 2022 and Upstart Network restarted filing in February of 2023.

It is not known for when Upstart started to straw-purchase credit reports and pretend to deny loans. It would seem likely it occurred after their stock bottomed out at $30/share in mid 2022 after enjoying a meteoric rise to $400 during 2021, which caused layoffs of over 360 employees, 20% of its workforce in February of 2023 (https://finance.yahoo.com/news/upstart-subpoenaed-sec-over-ai-115219262)

Screenshot of UPST stock price since December, 2020.



6

## **STATEMENT OF FACTS**

1-   In March of 2024 Plaintiff started to receive a series of letters offering personal loans which as previously stated turn out to be scams attempting to get him to enroll in debt restructuring.

2-   During a recent review of his Transunion credit report the Plaintiff noticed the Defendant had obtained his credit report a total of sixteen times since September of 2022. Nine of those have occurred since March of 2024, when the offer letters started.

3-   Three of the inquiries were "Promotional Inquiries" which includes limited information for purposes of making "a firm offer of credit or insurance" as required by the FCRA. For reasons unknown the inquiries were made in quick succession in August, November and December of 2023. Plaintiff avers he never interacted with the Defendant on those occasions. (see below)

---

**Promotional Inquiries**

The companies listed below received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score.

---

**UPSTART NETWORK INC**

Location
2 circle star way
2ND FLOOR
SAN CARLOS, CA 94070

Phone
(833) 568-7899

Requested On
12/27/2023, 11/29/2023, 08/29/2023

---

4-      The other thirteen credit report inquiries were "Account Review Inquiries" which are more in depth. Pursuant to the FCRA they are only obtained "in connection with an account review or other business transaction with you." (see below)

---

**Account Review Inquiries**

The listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you. These inquiries are not seen by anyone but you and will not be used in scoring your credit file (except insurance companies may have access to other insurance company inquiries, certain collection companies may have access to other collection company inquiries, and users of a report for employment purposes may have access to other employment inquiries, where permitted by law).

---

**UPSTART NETWORK INC**

Location
2 CIRCLE STAR WAY
2ND FLOOR
SAN CARLOS, CA 94070

Requested On
06/21/2024, 06/04/2024, 05/23/2024, 05/20/2024,
05/07/2024, 04/22/2024, 04/17/2024, 03/28/2024,
03/02/2024, 02/16/2023, 02/12/2023, 12/24/2022, 09/08/2022

Phone
(650) 204-1000

---

5-      Plaintiff avers he had no interaction with the Defendant in relation to the credit reports obtained by Defendant on September 8th, 2022, December 24th, 2022, February 12th, 2023, February 16th, 2023 and March 2nd, 2024.

6-      With regard to the other six inquiries Plaintiff avers he does not recall interaction with anyone from Upstart, but did have contact with scam artists trying to enroll Plaintiff into the aforementioned debt-restructuring programs using offers sent through the United States Postal Service.

7-      On March 28th, 2024 Plaintiff interacted with a company called Sky Bridge Financial. That company obtained Plaintiff's Experian credit report through another straw purchaser while the Defendant obtained Plaintiff's Transunion credit report.

8-      On April 17th, 2024 Plaintiff interacted with a firm called New Capital Financial. That same day the Defendant obtained Plaintiff's Transunion credit report along with an affiliate of New Capital called Tripoint Lending obtaining Plaintiff's Experian credit report. (see below)



9-      On April 22nd, 2024 the defendant, along with another firm called Rocketship Financial, obtained copies of Plaintiff's Transunion credit report. Rocketship obtained a "Promotional" copy (see below) and Defendant received the full report. This was done despite no interaction with the Plaintiff.

```
ROCKETSHIPFIN

Location                                Requested On
41 CORPORATE PARK                       04/22/2024
IRVINE, CA 92606

Phone
(888) 603-1007
```

10- On May 7th, 2024 Plaintiff interacted with a firm called Symple Lending. That same day the defendant ran Plaintiff's Transunion credit report. (see pg-8/para-4)

11- On May 20th, 2024 Plaintiff interacted with Rocketship Financial. That same day the Defendant obtained Plaintiff's Transunion credit report (see pg-8/para-4)

12- On May 23rd Plaintiff interacted with a firm called Tomo Financial. That same day the Defendant obtained the Plaintiff's Transunion credit report. (see pg-8/para-4)

13- On June 4th, 2024 Plaintiff interacted with a firm called Forward Funding Group, Inc. That same day the Defendant obtained Plaintiff's Transunion credit report (see pg-8/para-4)

14- On June 20th, 2024 Plaintiff interacted with a firm called Century Support Services, LLC. That same day the Defendant obtained Plaintiff's Transunion credit report (see pg-8/para-4)

## STATEMENT OF CLAIMS

### COUNT ONE
### Violation of 15 USC § 1681b(f)(1):
### Certain use or obtaining of information prohibited

15-   Plaintiff repeats, restates and incorporates by reference all prior paragraphs and allegations as if fully set forth.

16-   On sixteen occasions Defendants obtained the Plaintiff's Transunion credit report for marketing, which is not allowable per 15 USC § 1681b, thereby committing sixteen violations of 15 USC § 1681b(f)(1).

17-   Defendants are liable to Plaintiff for sixteen violations of 15 USC § 1681b(f)(1) per §1681n(a)(1)(B), punitive damages per §1681n(a)(2) costs and attorney fees per §1681n(a)(3).

### COUNT TWO
### Violation of 15 USC § 1681b(f)(2):
### Failure to Certify

18-   Plaintiff repeats, restates and incorporates by reference all prior paragraphs and allegations as if fully set forth.

19-   On sixteen occasions the Defendants obtained the Plaintiff's Transunion credit report without lawfully certifying the purpose as required per 15 USC § 1681e, thereby committing sixteen violations of 15 USC § 1681b(f)(2).

20-   Defendants are liable to Plaintiff for sixteen violations of 15 USC § 1681b(f)(2) per §1681n(a)(1)(B), punitive damages per §1681n(a)(2) costs and attorney fees per §1681n(a)(3).

## COUNT THREE
### Violation of 15 USC § 1681q:
### Compliance Procedures

21- Plaintiff repeats, restates and incorporates by reference all prior paragraphs and allegations as if fully set forth.

22- By obtaining Plaintiff's Transunion credit report under false pretenses on sixteen occasions the Defendants have committed sixteen violations of 15 USC § 1681q, triggering a civil liability per1681:

"*knowingly and willfully obtaining information under false pretenses from a consumer reporting agency, constituted a basis for civil liability under 15 U.S.C. § 1681n.*" Auriemma v. Montgomery, 860 F.2d 273, 274 n. 1 (7th Cir. 1988)

23- Defendants are liable to Plaintiff for sixteen violations of 15 USC § 1681q per §1681n(a)(1)(B), punitive damages per §1681n(a)(2) costs and attorney fees per §1681n(a)(3).

## COUNT FOUR
### Violation of 18 USC § 1962
### Prohibited Activities

24- Plaintiff repeats, restates and incorporates by reference all prior paragraphs and allegations as if fully set forth.

25- On sixteen occasions Defendants obtained the Plaintiff's Transunion credit in conjunction with a "Bait and Switch" Fraud involving the false advertising bait of personal loans being switched with debt restructuring. The advertisements were sent in letters sent through the United States Postal Service which constitutes Mail Fraud as defined in 18 USC § 1341.

26-   The repeated Mail Fraud constitutes Racketeering as defined in 18 USC § 1961(1)(B), thereby violating Sections 1962(b) and (c), which triggers a private right of action per Section 1964(c).

27-   The Defendants are liable to the Plaintiff for "threefold the damages" as well as costs and attorney fees pursuant to 18 USC ,§ 1964(c).

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that judgment be entered against the Defendants for the following:

A.   Declaratory judgment that Defendants' violated the Fair Credit Reporting Act

B.   Statutory damages of $1,000 per violation per FCRA: 15 USC § 1681n(a)(1)(B) with forty-eight (48) violations is a total of $48,000.00
Pursuant to 18 USC § 1964(c) those damages are Trebled to $144,000.00

C.   Punitive Damages of $10,000,000 per FCRA: 15 USC § 1681n(a)(2)
(See Plaintiff's Memorandum Regarding Punitive Damages)

D.   Costs and legal fees per FCRA: 15 USC § 1681n(a)(3)

E.   An order referring this matter to the appropriate law enforcement agency for criminal prosecution of violations of 15 USC § 1681q.

F.   For such other and further relief as the court may deem to be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

_Erik T. Robinson_   July/10/2024
Erik T. Robinson Plaintiff/Attorney Pro Se         Date

Case 1:24-cv-01998-TNM    Document 1    Filed 07/10/24    Page 14 of 14