UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIK T. ROBINSON,

Plaintiff,

v.

UPSTART HOLDINGS, INC.,

Defendant.

Case No. 1:24-cv-1998 (TNM)

### MEMORANDUM OPINION

Erik Robinson, proceeding pro se, asks for over $10,000,000 because Upstart, a company he has "never interacted with," pulled his credit report sixteen times over a few years. He admits that the pulls had zero effect on his credit, but he says that his mental anguish is enough to deserve a big payout. The Court disagrees. For the reasons below, the Court will grant Upstart's motion to dismiss.

### I.

Erik Robinson alleges that he received a "series of letters offering personal loans" that "turn[ed] out to be scams attempting to get him to enroll in debt restructuring." Am. Compl. at 14.[1] He called the companies that sent seven of these letters, and his Complaint strongly implies that he was disappointed when asking for personal loans. Am. Compl. at 2–4. Reviewing his credit report, Robinson discovered that Upstart Holdings had pulled his credit sixteen times. Am. Compl. at 14. Three of the pulls, he says, were "promotional inquiries" that include "limited information for the purposes of making a firm offer of credit or insurance as required by the FCRA [Fair Credit Reporting Act]." Am. Compl. at 14 (cleaned up). Another eight of them

---

[1] The Complaint does not contain consistently numbered paragraphs, so the Court refers to page numbers.

were "more in depth" inquiries that were "in connection with an account review or other business transaction with [Robinson]." Am. Compl. at 15. He admits that seven of these account-review pulls occurred on days when he "interacted with" seven companies—none of them Upstart—about the personal loan "offer letter[s]" he received in the mail. Am. Compl. at 15–17. He repeatedly states that he never interacted with Upstart on any of those occasions. Am. Compl. at 15–17. Robinson remains mystified about the six other credit pulls because he insists that he never prompted them. Am. Compl. at 15 (listing five credit pulls), 16 (listing one more that involved a company he had interacted with on a different day than the credit pull). Throughout all of this, he claims that he never received a single "adverse-action" notice, as he believes is "required by law when a loan is denied." Am. Compl. at 4.

Robinson alleges that Upstart's credit pulls have caused "the same sort of mental anguish as the consumers in the [Supreme Court's] *Transunion* case." Am. Compl. at 7. But he admits that he has "avoided the[] pitfalls" of "damage to credit scores" and other "penalties to enrolling in the debt-relief programs." Am. Compl. at 11. To compensate him for the emotional damage, Robinson demands over $10,000,000 under the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), and the Racketeer Influenced and Corrupt Organizations Act (RICO). Am. Compl. at 18–21. He sues only Upstart Network, Inc. as the main culprit of the credit pulls. Am. Compl. at 1. Upstart moves to dismiss this case because Robinson lacks standing or, alternatively, he has not stated a claim under any of these statutes. Mot. Dismiss, ECF No. 13. Robinson opposes dismissal. Opp. Mot. Dismiss, ECF No. 14. The motion is ripe for consideration. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

## II.

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). That includes showing that he has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). But those factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom., Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must be supported by sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In evaluating a Rule 12(b)(6) motion, the Court must similarly construe the complaint in the light most favorable to the plaintiff. *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017). But a complaint offering mere "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement" does not meet the plausibility standard. *Ashcroft*, 556 U.S. at 678.

The Court "liberally construe[s]" pro se filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). And it considers all his filings alongside his complaint. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). But the special solicitude afforded to pro se litigants does not permit plaintiffs "to ignore the Federal Rules of Civil Procedure," including the requirements of *Iqbal* and *Twombly*. *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020); *see Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009).

### III.

Robinson makes three claims under the FCRA. He alleges that (1) Upstart pulled his credit report for an impermissible reason, violating 15 U.S.C. § 1681b(f)(1); (2) that the credit reporting agency failed to certify that it was pulling the report for a permissible reason, violating 15 U.S.C. § 1681b(f)(2); and (3) that Upstart did so "knowingly and willfully" "under false pretenses," triggering civil liability under 15 U.S.C. § 1681q. Am. Compl. at 18–19. Upstart responds that the case must be dismissed for several reasons. Mot. Dismiss at 5–8.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994). Article III of the Constitution limits federal courts' jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. Courts have interpreted this principle to mean that litigants must have "standing:" they must show (1) an injury-in-fact, (2) that is traceable to the defendant's conduct, and (3) that can be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61.

The injury-in-fact must be "a concrete and particularized," "actual or imminent" "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. For an injury to be concrete, it must be "real, and not abstract." *Spokeo v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up). Showing "a bare procedural violation, divorced from any concrete harm," is not enough to show

an injury-in-fact. *Id.* at 341. "Even if Congress imposes a statutory prohibition or obligation and a cause of action, courts must still independently decide whether a plaintiff has suffered a concrete harm under Article III." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1193 (7th Cir. 2021) (cleaned up). The plaintiff bears the burden of establishing standing to invoke federal courts' power. *Lujan*, 504 U.S. at 560–61.

Robinson alleges that he has suffered an Article III harm because he endured "mental anguish," as the consumers in a recent Supreme Court case did, after Upstart pulled his credit. Am. Compl. at 7. The high court recognized that "[i]ntangible harms can also be concrete," just as "physical or monetary injury" can be. *TransUnion v. Ramirez*, 594 U.S. 413, 425 (2021). But to be concrete, intangible harms must involve "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Robinson's Complaint, construed generously given his pro se status, pleads mental anguish under an FCRA cause of action that has a close relationship to intrusion upon seclusion, a historical basis for lawsuits in American courts. *Persinger*, 20 F.4th at 1193 (so holding for 15 U.S.C. § 1681b); *Nayab v. Cap. One Bank*, 942 F.3d 480, 491–92 (9th Cir. 2019); Am. Compl. at 7. But his allegations of mental anguish are skeletal. Am. Compl. at 1–21, 7. So he just clears the injury-in-fact hurdle. Robinson more properly pleads that this mental anguish is directly traceable to Upstart's credit pulls that appear on his report, and that this Court can redress that anguish through the FCRA's civil damages remedy. Am. Compl. at 7–9, 21; 15 U.S.C.

§§ 1681b, 1681q, 1681n.  So, in sum, Robinson has pleaded standing under the post-*TransUnion* test, though barely.

Though he has standing to bring his FCRA claims, they fail on the merits.  To start, he effectively concedes that ten of the credit pulls were made for a "proper purpose" under the FCRA.  That statute requires consumer reporting agencies only to release credit reports to entities for a list of permissible purposes, and if the credit agency fails to ensure that the entity is requesting the report for a proper reason, it can be required to pay damages to the consumer.  15 U.S.C. §§ 1681b(f), 1681n.  Robinson alleges specifically that three of Upstart's pulls were "promotional inquiries" for the "purposes of making a firm offer of credit or insurance as required by the FCRA."  Am. Compl. at 14.  This statement concedes both the facts and the law that Upstart was pulling the report for the permissible purpose of making a "firm offer of credit," which the FCRA allows entities to do without the consumer initiating any transaction.  15 U.S.C. § 1681b(c)(1)(B)(i).

Next, seven of the credit pulls occurred on days when he admits "interact[ing] with" seven companies that had sent him personal loan "offer letter[s]."  Am. Compl. at 15–17.  Even without interacting with Robinson, of course, Upstart could have pulled his report for a "firm offer of credit."  15 U.S.C. § 1681b(c)(1)(B)(i).  But particularly because he admits interacting with these companies, they may pull reports "in connection with a credit transaction involving the consumer."  15 U.S.C. § 1681b(a)(3)(A).  Nothing in the statute—and certainly nothing Robinson points toward—suggests that the entity pulling the report must be the precise entity interacting with the consumer, if it is pulled for the proper purpose "in connection with a credit transaction."  *Id.*  So for ten of the credit pulls, Robinson's alleged facts concede that they were

6

made for a proper purpose. The record contradicts his legal claims. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011).

As for the other six pulls, he has not pleaded facts rising above mere speculation that the credit pulls were improper. He contends that Upstart pulled his credit report sixteen times for the impermissible purpose of "marketing debt-relief." Am. Compl. at 18. But, as discussed, most of these were for a patently permissible reason, and he has made no specific allegations at all for the remaining six. *See* Am. Compl. at 15. Recall that he has three claims based on these six pulls: That Upstart pulled his credit report for an impermissible reason, that the agency failed to certify the reason before releasing the report, and that Upstart pulled his report under "false pretenses." Am. Compl. at 18–19. He has pleaded no facts suggesting that Upstart lied when pulling his credit report. *See* Am. Compl. at 1–21. The only facts pleaded strongly suggest that these pulls, like all the others, were for "firm offer[s] of credit," which may be pulled without the consumer initiating any transaction at all. Am. Compl. at 14–17. The Court accepts as true all reasonable factual inferences drawn from a pro se litigant's allegations. *Zimmerman*, 246 F. Supp. 3d at 285. But a complaint offering "naked assertions devoid of further factual enhancement" does not meet the "plausibility" standard under Rule 12(b)(6). *Ashcroft*, 556 U.S. at 678 (cleaned up). Such is the case here.

### IV.

Robinson's fourth claim arises under the ECOA. Am. Compl. at 19. He alleges that Upstart violated 15 U.S.C. § 1691(d) by denying him a loan and failing to inform him of the reasons for that denial within thirty days of the decision. Am. Compl. at 19–21. Upstart argues that Robinson lacks standing to pursue this claim. Mot. Dismiss at 8–9. The Court agrees.

Robinson fails to plead an actual or imminent injury.  Recall that he must show that he "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. at 423.  Robinson has pleaded facts that concede that he did not suffer an "actual or imminent" injury under the ECOA.  *Id*.  He repeatedly alleges that he never applied for a loan from Upstart in the first place.  Am. Compl. at 14–17; Opp. Mot. Dismiss at 4.  So his pleading concedes that there was no violation of the ECOA that "presented an appreciable risk of harm" to "the interest that Congress sought to protect": applying for loans and being denied without explanation.  *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)). Because Robinson neither wanted nor applied for a loan from Upstart, he could not possibly have suffered from failing to receive an explanation for a nonexistent application.

It is of no moment that Robinson pleaded standing under the FCRA.  His "mental anguish" satisfied the *concreteness* requirement for the FCRA statute because the FCRA's cause of action was similar to a historical harm recognized in American courts.  *See supra* Part III.A. But the ECOA claims are different because he has not shown the other components of the injury-in-fact analysis:  He has not pleaded a particularized, actual, or imminent harm to the "interest that Congress sought to protect." *Wadsworth*, 12 F.4th at 668 (cleaned up).  So the Court need not decide whether the ECOA's cause of action bears a close relationship to a harm traditionally recognized in American courts because Robinson has not pleaded the other two required components of a conjunctive test.  *See TransUnion*, 594 U.S. at 423.

Because Robinson "does not claim to have suffered an injury[-in-fact]," there is "no case or controversy for the federal court to resolve." *TransUnion*, 594 U.S. at 423 (cleaned up).  This Court lacks subject-matter jurisdiction over Robinson's ECOA claim.

V.

Robinson's final claim is that Upstart violated RICO because it committed mail fraud. Am. Compl. at 20. Once again, Upstart argues that Robinson lacks standing to pursue this claim. Mot. Dismiss. at 9–10. And here, the Court agrees.

Robinson claims that he received "false advertising bait of personal loans being switched with debt restricting" in the mail. Am. Compl. at 20. But he alleges no fewer than ten times that he "never interacted with Upstart." Am. Compl. at 14–17. His Complaint is conscientious about describing companies from whom he *did* receive offer letters. Am. Compl. at 14–17; *see* Pl. Ex., ECF No. 11-1 (Robinson's offer letters, none of which are from Upstart). In short, Robinson claims that he was the victim of mail fraud from Upstart but specifically alleges that he never received a piece of mail from, or had any other interaction with, Upstart. If he has suffered any anguish from receiving mailings, it is not "fairly traceable to" Upstart. *Lujan*, 504 U.S. at 560–61 (cleaned up).[2] He lacks standing for his RICO claim and it must be dismissed for lack of subject-matter jurisdiction.

VI.

For all these reasons, the Court will grant Upstart's Motion to Dismiss without prejudce. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice."). The Court accordingly will deny as moot Robinson's Motion for a Rule 16 Conference, Motion for a Status Conference, and Motion for Mediation.

---

[2] Robinson also submitted a supplemental memo informing the Court that he was the victim of a data breach. Pl.'s Supp. Memo, ECF No. 16. He offers that data breach as evidence of the "mental anguish" he suffers over Upstart's actions. *Id.* at 2. It is unclear which claims Robinson believes this supports. In any event, the apparent data breach does not establish standing because he admits that he does not know how the hack occurred or whether it was in any way related to Upstart's activities. *Id.*

**SO ORDERED**.

Dated: September 29, 2024                                       TREVOR N. McFADDEN, U.S.D.J.